IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JHAVON R. GOODE,                    :
                                    :
              Petitioner,           :
                                    :
      v.                            :      Civil Action No. 18-1553-RGA
                                    :
TRUMAN MEARS, Warden, and           :
ATTORNEY GENERAL OF THE             :
STATE OF DELAWARE,                  :
                                    :
              Respondents.          :

_____

**MEMORANDUM OPINION**

Jhavon R. Goode.  *Pro se* Petitioner.

Kathryn J. Garrison, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware.  Attorney for Respondents.

March ___, 2022
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Jhavon R. Goode's Petition and Amended Petition

for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (collectively referred to as "Petition").

(D.I. 1; D.I. 11)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I.

14; D.I. 18)  For the reasons discussed, the Court will dismiss the Petition.

## I.     BACKGROUND

### A.  Factual Background

As summarized by the Delaware Supreme Court in Petitioner's direct appeal, the facts

leading up to Petitioner's conviction are as follows:

> On April 9, 2014, Jason Terry was walking home after playing
> basketball at a park in Milford, Delaware.  Terry passed by 105
> Montgomery Street, a house frequented by people who were known
> for drinking and generally carrying on.  While walking by the house
> he ran into an acquaintance, Tiger Reynolds.  Reynolds told Terry
> that a person behind the house wanted to buy marijuana.  Evidently,
> Terry was someone known to have marijuana on hand to sell.
> Intending to make a sale, Terry walked down the alley to the area
> behind 105 Montgomery Street to meet the prospective buyer.
>
> Behind the house he encountered two men he did not recognize, one
> of whom was sitting in a car.  The man in the car said he wanted to
> buy the marijuana. Terry approached him and took the drugs out of
> his pocket.  As he did this, the man in the car pulled out a pistol from
> under his clothing and pointed it at Terry.  Terry, shocked at having
> the gun pointed at him, asked the man if he was really going to rob
> him over seven grams of marijuana. The man then shot Terry two
> times.
>
> Terry stumbled back to the street, where police and an ambulance
> arrived shortly and took him to the hospital. The shooter and the
> other man fled.  They did not take the drugs. Although there were
> various individuals present in and around 105 Montgomery Street at
> the time of the shooting, they were all uncooperative when police
> questioned them about the shooter's identity.
>
> Fortunately, the neighbors in the house next door witnessed and
> filmed portions of the episode, and were more forthcoming with

police. One neighbor identified [Petitioner], whom he recognized from high school, as being present behind 105 Montgomery Street before the shooting. The neighbors also filmed Terry going down the alley before he was shot, men fleeing after the shooting, and the wounded Terry stumbling back up the alley after the shooting. The film also captured the sound of gunshots. The police recovered two shell casings from the ground near where the shooting occurred, but no weapon.

Terry was taken to the Milford Memorial Hospital, where Detective John Horsman questioned him. Detective Horsman had been among the first officers to arrive at the scene of the shooting. Although Terry could not identify the shooter by name, he said that he would be able to recognize the man if he saw him. The next day, Terry was moved to Christiana Hospital. During his second interview with the police there, Terry repeated to Detective Horsman that he would be able to identify the shooter if he saw his face.

After the second interview with the police, Terry's cousin Raye Boone showed Terry a picture of [Petitioner] that she found on Facebook. According to Boone, [Petitioner] had been going around town bragging about shooting Terry. After seeing the picture of [Petitioner], Terry was sure [Petitioner] was the man who shot him. The police arrested [Petitioner] for the shooting after Terry identified [Petitioner] as the shooter based on the picture Boone showed to him.

*Goode v. State*, 136 A.3d 303, 306–07 (Del. 2016).

## B. Procedural Background

Petitioner was indicted on May 19, 2014, and charged with first degree assault, possession of a firearm during the commission of a felony ("PFDCF"), carrying a concealed deadly weapon ("CCDW"), possession of ammunition by a person prohibited ("PABPP"), and two counts of possession of a firearm by a person prohibited ("PFBPP"). (D.I. 15-1 at 1, Entry No. 5) On October 13, 2014, the Superior Court severed the PFBPP and PABPP charges. (D.I. 15-1 at 3, Entry No. 28) In November 2014, Petitioner filed a motion *in limine* to exclude the

2

victim Terry's identification of him by a photograph. (D.I. 15-3 at 62-65) The Superior Court denied the motion after holding a hearing. (*Id.* at 68-70)

On January 15, 2015, a Superior Court jury convicted Petitioner of first degree assault, PFDCF, and CCDW. *See Goode*, 136 A.3d at 308. Petitioner filed a motion for judgment of acquittal or, alternatively, for a new trial. (D.I. 15-1 at 7, Entry Nos. 70-73) The Superior Court denied the motion. (D.I. 15-1 at 7, Entry Nos. 68-72)

Before sentencing, police officers discovered a gun which matched the shell casings found at the crime scene in this case. *See Goode*, 136 A.3d at 308. The parties and the Superior Court agreed that further testing should be performed on the gun, and the Superior Court postponed Petitioner's sentencing to allow for additional testing and to provide trial counsel with an opportunity to file a motion for new trial if trial counsel determined one was warranted. *See id.* Petitioner did not file a motion for new trial by the next status conference. (D.I. 15-5 at 77-78) Sentencing was scheduled, at which time trial counsel requested a continuance so testing could be conducted on the gun. (D.I. 15-1 at 7, Entry Nos. 68, 74-79; D.I. 15-2 at 11; D.I. 15-5 at 78) The Superior Court denied the continuance request, and proceeded with sentencing. (D.I. 15-1 at 8, Entry Nos. 76, 77, 82; D.I. 15-5 at 79) On May 29, 2015, the Superior Court sentenced Petitioner as follows: (1) for the PFDCF conviction, to five years at Level V incarceration (with credit for 406 days previously served); (2) for the first degree assault conviction, to fifteen years at Level V incarceration, suspended after eight years for six months at Level IV work release, followed by two years at Level II probation; and (3) for the CCDW conviction, to five years at Level V incarceration, suspended for two years of Level III probation. *See State v. Goode*, 2017 WL 4164421, at *1 (Del. Super. Ct. Sept. 20, 2017). Petitioner

3

appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentences on April 4, 2016. *See Goode,* 136 A.3d at 315.

Petitioner filed a counseled motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on September 12, 2016. (D.I. 15-11 at 63-64) On January 30, 2017, post-conviction counsel filed a motion to withdraw from representation because he could find no meritorious issues to pursue. (*Id.* at 66) Another attorney took over representing Petitioner and filed an amended Rule 61 motion on March 16, 2017. (*Id.* at 81-105) The Superior Court denied the amended Rule 61 motion on September 20, 2017, and the Delaware Supreme Court affirmed that decision in July 2018. *See Goode,* 2017 WL 4164421, at *4; *Goode v. State,* 190 A.3d 996 (Table), 2018 WL 3323644 (Del. Jul. 5, 2018).

## II.  GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot grant habeas relief for a claim challenging the validity of the petitioner's state custody unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44 (1999); *Picard v. Connor,* 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

4

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or
   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

5

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal

court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's

decision was "contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States," or the state court's decision was

an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C.

§ 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if

the state court decision finally resolves the claim on the basis of its substance, rather than on a

procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The

deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by

an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86,

98 (2011). As explained in *Harrington*, "it may be presumed that the state court adjudicated the

claim on the merits in the absence of any indication or state-law procedural principles to the

contrary." *Id.* at 99. The Supreme Court expanded the purview of the *Richter* presumption in

*Johnson v. Williams*, 568 U.S. 289 (2013). Pursuant to *Johnson*, if a petitioner has presented the

claims raised in a federal habeas application to a state court, and the state court opinion addresses

some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that

the state court adjudicated the unaddressed federal claims on the merits. *Id.* at 298-301. The

consequence of this presumption is that the federal habeas court will then be required to review

7

the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] *de novo*." *Id.* at 292-93.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner's timely filed § 2254 Petition asserts four grounds for relief: (1) the Delaware state courts unreasonably determined the facts and unreasonably applied federal law by rejecting Petitioner's argument that his due process rights were violated by the introduction of Terry's out-of-court identification of Petitioner that was based upon a photograph of Petitioner provided by Terry's cousin; (2) the trial court's refusal to provide Petitioner's requested eyewitness jury instruction deprived Petitioner of his right to due process, and appellate counsel provided ineffective assistance by failing to raise this argument on direct appeal; (3) trial counsel provided ineffective assistance by eliciting prejudicial testimony while cross-examining the victim Terry; and (4) the State violated Delaware Superior Court Criminal Rule 16(b), *Brady v. Maryland*, 373 U.S. 83 (1963), and the Confrontation Clause by not providing Petitioner with Raye Boone's

(Terry's cousin) name and the email Boone sent to Detective Horsman prior to the *motion in limine* hearing.

### A. Claim One:  Unreliable Witness Identification

Before trial, counsel filed a motion *in limine* to exclude Terry's eyewitness identification of Petitioner that was based upon a photograph Terry's cousin Raye Boone found on Facebook. (D.I. 15-3 at 63-65)  Petitioner argued that the admission of Terry's identification violated his due process rights because it was unreliably suggestive and tainted any in-court identification. *Id*.  The Superior Court denied the motion *in limine*, explaining that there was no due process violation because no state actor was involved in the identification process.  (D.I. 15-3 at 68-74) Petitioner presented the same identification/due process violation argument to the Delaware Supreme Court on direct appeal.  The Delaware Supreme Court affirmed the Superior Court's decision:

> Terry identified [Petitioner] based on the photograph his cousin found on Facebook. The police were not involved in the identification, which ends the constitutional inquiry. We also note that [Petitioner] availed himself of all the procedural protections available to ensure a fair trial. The court appointed counsel for [Petitioner], who attempted through cross-examination to undermine the credibility and reliability of Terry's identification. The court instructed the jury that to convict they must find beyond a reasonable doubt that it was, in fact, [Petitioner] who shot Terry. In addition, [Petitioner's] counsel argued strenuously that Terry's identification was unreliable. [Petitioner] also elected not to call Boone as a witness, which was within counsel's strategic discretion. Accordingly, the Superior Court correctly declined to suppress Terry's identification of [Petitioner].

*Goode*, 136 A.3d at 311.

In Claim One, Petitioner contends that Terry's pre-trial identification of him should have been suppressed as unduly suggestive because the identification was based on a photograph from

Facebook provided to Terry by his cousin Raye Boone. Given the Delaware Supreme Court's denial of the same argument, Claim One will only warrant relief if the Delaware Supreme Court's decision involved an unreasonable determination of facts or an unreasonable application of clearly established federal law.

The clearly established federal law governing the admissibility of eyewitness identifications is articulated in *Simmons v. United States*, 390 U.S. 377, 384 (1968) and its progeny. In *Simmons*, the Supreme Court held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside ... only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384. The Supreme Court has clarified that the Due Process Clause is only implicated when the identification involves the "presence of state action." *Perry v. New Hampshire*, 565 U.S. 228, 241 (2012). As a result, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Id.* at 248.

Petitioner contends that the Delaware state courts unreasonably determined the facts by concluding the police were not involved in Terry's identification of Petitioner. Specifically, Petitioner asserts that the police were involved in the identification process because Raye Boone emailed the photo to Detective Horsman, who then showed the photo to Terry. Petitioner, however, is mistaken about the sequence of events. The record demonstrates that Detective Horsman visited Terry at Christiana Care Hospital on April 10, 2014. (D.I. 15-5 at 14, 18) Although Terry provided Detective Horsman with a general description of the shooter and stated

10

he would recognize the shooter if he saw the person again, Terry was not able to provide the Detective with the shooter's name. (D.I. 15-5 at 14, 18-19)  It appears that Boone visited Terry in the hospital on April 10, 2014, after Detective Horsman's visit (D.I. 14-1 at 1-2; D.I. 15-9 at 10), at which time she showed the photo to Terry, and sent the photo to Terry's phone. (D.I. 14-1; D.I. 15-3 at 46; D.I. 15-9 at 10)  Detective Horsman visited Terry in the hospital on April 11, 2014 and, during that visit, Terry showed Detective Horsman the photo on his phone and said, "This is the guy that shot me." (D.I 14-1 at 2-3; D.I. 15-5 at 19-20; D.I. 15-9 at 7-8)  Either simultaneously or a short time thereafter, but while Detective Horsman was still in Terry's hospital room, Horsman received an email from Boone that contained the same photo. (D.I. 15-5 at 22-23)

This summary of facts demonstrates that Terry identified Petitioner as the shooter from the photo provided by Boone before Detective Horsman even had a copy of the photo.  Given Petitioner's failure to provide  any clear and convincing evidence to the contrary, the Court accepts as correct the Delaware Supreme Court's factual determination that the Terry's out-of-court identification of Petitioner was not procured by law enforcement action.[1]

---

[1]The Court's instant inquiry focuses on whether the identification process involved a "state-arranged identification procedure." *See United v. Jones*, 785 F. App'x 68, 69-70 (3d Cir. Aug. 20, 2019).  Given the absence of any state or police action, the Court does not need to consider the issue of "suggestiveness." *See Perry*, 565 U.S. at 241-44.  Nevertheless, the following excerpt from *Perry* addresses Petitioner's implicit argument regarding the suggestiveness of eyewitness identifications:

> Most eyewitness identifications involve some element of suggestion.
> Indeed, all in-court identifications do.  Out-of-court identifications
> volunteered by witnesses are also likely to involve suggestive
> circumstances.  For example, suppose a witness identifies the defendant to
> police officers after seeing a photograph of the defendant in the press
> captioned "theft suspect," or hearing a radio report implicating the

In turn, since the police were not involved in Terry's out-of-court identification of Petitioner, the Court concludes that the Delaware state courts did not unreasonably apply *Simmons* and *Perry* in holding that there was no need to engage in any further due process inquiry with respect to Terry's out-of-court identification. Accordingly, the Court will deny Claim One for failing to satisfy the standard in § 2254(d)(1) and (2).

## B.  Claim Two:  Eyewitness Identification Jury Instruction

In Claim Two, Petitioner contends that the Superior Court violated his right to due process by refusing to include his requested language in the eyewitness identification jury instruction. Petitioner also contends that appellate counsel provided ineffective assistance by failing to raise the issue on direct appeal.

The record reveals that the Delaware Supreme Court denied the ineffective assistance of counsel argument as meritless on post-conviction appeal. In contrast, the Superior Court denied Petitioner's due process argument in Petitioner's Rule 61 proceeding as procedurally barred under Rule 61(i)(4) for being formerly adjudicated. *See Goode*, 2017 WL 4164421, at *3. On post-conviction appeal, the Delaware Supreme Court noted in a footnote that the "Superior Court properly rejected [Petitioner's free-standing due process claim] as procedurally barred under Rule 61(i)(4),"[2] but proceeded to adjudicate the merits of the due process claim when it decided

---

defendant in the crime. Or suppose the witness knew that the defendant ran with the wrong crowd and saw him on the day and in the vicinity of the crime. Any of these circumstances might have "suggested" to the witness that the defendant was the person the witness observed committing the crime.

*Perry*, 565 U.S. at  244.

[2]*Goode*, 2018 WL 3323644, at *2 n.8.

12

Petitioner's ineffective assistance of appellate counsel claim. *See Goode*, 2018 WL 3323644, at *3.

The State contends that the Delaware state courts' application of Rule 61(i)(4) to Petitioner's freestanding due process claim demonstrates that the argument is procedurally defaulted and, therefore, argues that the Court should deny the claim as procedurally barred from habeas review. The Court disagrees. Although a formerly adjudicated claim barred by Rule 61(i)(4) is defaulted for Delaware state court purposes, on federal habeas review the fact that the claim was formerly adjudicated means that it was decided on the merits.[3] *See Cone v. Bell*, 556 U.S. 449, 466 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review."). Additionally, although a state court's alternative decision on the merits does not prevent a federal habeas court from relying on a state court's enforcement of a state procedural bar, in this situation the Court will proceed to analyze whether the Delaware Supreme Court's denial of both sub-arguments in Claim Two as meritless warrants relief under § 2254(d).

---

[3] The State asserts that there is a certain "category of cases" the Court has not treated as adjudicated on the merits after the state courts have applied Rule 61(i)(4), and contends that Petitioner's instant freestanding due process claim falls within that category. (D.I. 14 at 13 n.40) The Court is not persuaded. One of the cases the State cites to support its argument – *Wilson v. Carroll*, 2006 WL 2294881 (D. Del. Aug. 8, 2006) – was decided before the Supreme Court's 2009 explicit statement in *Cone v. Bell* that claims dismissed as procedurally barred in state courts due to being formerly adjudicated are not barred for federal habeas purposes. As for the other case upon which the State relies – *Johnson v. Hines*, 83 F. Supp. 3d 554, 560-61 (D. Del. 2015) – the finding of a procedural bar was premised on the state courts' combined application of Delaware's waiver rule and Rule 61(i)(4).

13

### 1.  Freestanding due process claim

Petitioner complains that the pattern jury instruction on eyewitness identification provided by the trial court did not give "guidance to the jury on how to evaluate eyewitness testimony despite the fact that identification was the basic issue in Petitioner's case." (D.I. 18 at 6)  Citing *United States v. Barbe*r, 442 F.2d 517 (3d Cir. 1971) and *United States v. Zeiler*, 470 F.2d 717 (3d Cir. 1972), Petitioner contends that the trial court was obligated to instruct the jury to focus "on precise factors which affect the credibility and reliability of eyewitness testimony." (D.I. 11 at 10; D.I. 18 at 5)  Consequently, Petitioner contends that the Superior Court deprived him of his right to due process by refusing to include the specific language he requested in the jury instruction.

Claims involving jury instructions in state criminal trials are matters of state law, and generally, are only cognizable on federal habeas review if the instructions were so fundamentally unfair that they deprived the petitioner of a fair trial and due process. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Estelle*, 502 U.S. at 71-72 ("[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief.").  On federal habeas review, the relevant question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Martin v. Warden, Huntingdon State Correctional Inst.,* 653 F.2d 799, 809 (3d Cir.1981) (cleaned up). Further, a habeas petitioner challenging a state court jury instruction must "point to a federal requirement that jury instructions on the elements of an offense . . .  must include particular

provisions," or "demonstrate that the jury instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).

The Superior Court in Petitioner's case gave the following pattern instruction to the jury:

> An issue in this case is the identification of the defendant. To find the defendant guilty, you must be satisfied beyond a reasonable doubt that the defendant has been accurately identified, that the wrongful conduct charged in this case actually took place, and that the defendant was, in fact, the person who committed the act. If there is any reasonable doubt about the identification of the defendant, you must give the defendant the benefit of such doubt and find the defendant not guilty.

(D.I. 15-9 at 23, 53) Trial counsel asked the Superior Court to add the following language to the instruction:

> Identification testimony is an expression of belief or impression by the witness. Its value depends upon the opportunity of the witness to observe the offender at the time of the offense, retain that memory and to make a reliable identification later. In appraising the identification testimony of Jason Terry you should consider the following:
>
> 1.  Whether Mr. Terry had the capacity and an adequate opportunity to observe the offender, at the time of the offense. [...]
>
> 2.  Was the in-court identification made by Jason Terry a product of his own recollection? You may consider both the strength of the identification, and the circumstances under which the in-court identification was made. If the identification by Jason Terry [was] influenced by circumstances under which the Defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity for Jason Terry to see the Defendant as a factor bearing on the reliability of the identification.

15

> 3. Finally, you must consider the credibility of Jason Terry's identification of the Defendant in the same way as any other witness, considering whether they are truthful, and considering whether they had the capacity and opportunity to make a reliable observation on the matter in their testimony.

(D.I. 15-9 at 51-52)  The Superior Court declined to add this language to the instruction because it viewed Petitioner's requested additional language as "something that will be appropriately argued by counsel." (*Id.* at 23)

Petitioner contends that the "proposed instruction submitted by trial counsel" would have "focus[ed] the jury's attention on how to analyze and consider the factual issues with regard to the trustworthiness of Terrys identification," whereas "the generic three sentence pattern instruction given by the court was insufficient [because] it failed to instruct the jury on the possibility of misidentification [or] emphasiz[e] the factors affecting reliability." (D.I. 11 at 13-14)  After considering the jury instruction in its entirety, the Court concludes that the Superior Court's failure to include Petitioner's requested language in the pattern eyewitness instruction did not deprive Petitioner of due process.  As an initial matter, there is no clearly established federal law requiring a special instruction on eyewitness identification.  The two cases cited by Petitioner – *Barber* and *Zeiler* –  are Third Circuit cases where the courts had adopted a cautionary eyewitness instruction requirement as part of the Third Circuit's supervisory power over the administration of criminal justice in federal courts within its jurisdiction.  Although many federal and state courts have adopted cautionary eyewitness-specific jury instructions that

16

warn "the jury to take care in appraising identification evidence,"[4] the requirement to give such

an instruction does not derive from the Due Process Clause or the United States Supreme Court.

In other words, there is no clearly established federal law requiring state courts to  provide

cautionary eyewitness-specific warnings in a jury instruction.

Moreover, as the Delaware Supreme Court held on post-conviction appeal, the "Superior

Court's instruction on eyewitness identification was a correct statement of the law, was

reasonably informative, and was not misleading." *Goode*, 2018 WL 3323644, at *3.  This Court

is bound to accept the Delaware Supreme Court's determination that the pattern jury instruction

complied with Delaware state law, and the fact that the instruction was a "generic three sentence

pattern instruction" does not affect that determination.  Additionally, the record reveals that trial

counsel focused the jury's attention on the issues of reliability and credibility during closing

argument.

Given all of these circumstances, Petitioner has failed to demonstrate that the Superior

Court's refusal to include his requested cautionary language in the jury instruction had a

substantial and injurious effect on the fairness of his trial so as to violate due process.

Accordingly, the Court will deny Petitioner's due process argument in Claim Two.

### 2.  Ineffective assistance of appellate counsel

Petitioner also contends that appellate counsel provided ineffective assistance by failing

to argue on direct appeal that the Superior Court erred in denying his requested eyewitness jury

instruction.  The Delaware Supreme Court denied the argument as meritless on post-conviction

appeal.  Therefore, Petitioner's ineffective assistance of appellate counsel claim will only

─────────────────

[4]*Perry* , 565 U.S. at 246.

warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of trial and appellate counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004) (explaining that the right to effective assistance of counsel also extends to the first appeal). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* In the appellate context, the test for prejudice under *Strickland* "is not whether petitioners would likely prevail upon remand, but whether [the court of appeals] would have likely reversed and ordered a remand had the issue been raised on direct appeal." *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000); *see also Smith v. Robbins*, 528 U.S. 259, 287-88 (2000) (explaining that the question when determining prejudice in the appellate context is whether the issues counsel did not raise "were clearly stronger" than the issues counsel did raise).

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885,

18

891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance of appellate counsel allegation. Consequently, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware state courts' denial of Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens.[5] *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied

---

[5]As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

*Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

Here, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying Petitioner's instant allegation. An attorney's decision about which issues to raise on appeal is strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Smith v. Robbins*, 528 U.S. 259, 272 (2000); *Jones v. Barnes*, 463 U.S. 745 (1983). As a general rule, the presumption of effective assistance of appellate counsel will be overcome "only when ignored issues are clearly stronger than those presented." *Smith*, 528 U.S. at 285. The Court has already determined that Petitioner's due process complaint regarding the Superior Court's failure to provide his requested instruction on eyewitness identification lacks merit. Consequently, the Court concludes that appellate counsel did not perform deficiently by failing to raise a meritless argument on direct appeal.

Similarly, Petitioner cannot demonstrate a reasonably probability that the Delaware Supreme Court would have likely reversed and ordered a remand but for appellate counsel's failure to challenge the jury instruction on direct appeal. Accordingly, the Court will deny Petitioner's ineffective assistance of appellate counsel claim for failing to satisfy the standard in § 2254(d).

20

### C. Claim Three:  Ineffective Assistance of Trial Counsel

Next, Petitioner contends that trial counsel provided ineffective assistance by eliciting prejudicial testimony from Terry during cross-examination.  Petitioner raised this argument to the Delaware state courts in his Rule 61 proceeding.  On post-conviction appeal, the Delaware Supreme Court denied Claim Three as meritless under *Strickland*.  Consequently, Claim Three will only warrant habeas relief if the Delaware Supreme Court's decision involved an unreasonable application of *Strickland*.

During Petitioner's trial, Terry testified that he identified Petitioner as the man who shot him after his cousin, Raye Boone, showed him a photo of Petitioner and told him that Petitioner had been going around town bragging about how he shot Petitioner.  The following exchange occurred during Terry's direct examination:

> STATE: How did [Boone] go about showing you this photo, what did she say?
>
> TERRY: Well, these two individuals, after they shot me they had to go around town and brag and tell everybody.

(D.I. 15-11 at 23-24)  The Superior Court immediately interrupted and told Terry not to testify about "[w]hat other people around town were saying," and also told the jury "to disregard that comment about the neighborhood."  (*Id.* at 24)  Trial counsel did not object to Terry's hearsay statement, and Terry did not make any more statements on direct examination about what Boone had told him.

On cross-examination, trial counsel asked Terry whether Boone had implied that Petitioner was the person who shot him.  (*Id.* at 25)  Terry responded, "No, she replies and she says we have an idea because they was going around town, somebody was going around town bragging about they shot somebody today.  And they was in the area—" (*Id.*)  Trial counsel

interrupted Terry and asked him, "She didn't say that, she shows you the picture and says, this is who we think shot you?" (*Id.*)  Terry replied, "Yes, and I identified the person because I know." (*Id.* at 26)

On direct appeal, Petitioner argued that Terry's testimony about what Boone told him violated Delaware's hearsay rules and the Confrontation Clause.  The Delaware Supreme Court held that the Superior Court's "prompt instruction for the jury to disregard the statements cured any [hearsay] error," and denied Petitioner's Confrontation Clause argument as waived.  *See Goode*, 136 A.3d at 312-13.  In his Rule 61 proceeding, Petitioner argued that "defense counsel's cross-examination of Terry was constitutionally ineffective because counsel should have anticipated the risk of eliciting Terry's inadmissible and prejudicial hearsay comment that 'somebody was going around town bragging about they shot somebody today.'  [Petitioner] contend[ed] that defense counsel's error incriminated him and that defense counsel compounded his mistake by failing to request a curative instruction."  *Goode,* 2018 WL 3323644, at *4.  The Superior Court denied the argument as barred under Rule 61(i)(4).  *See Goode*, 2017 WL 4164421, at *3.  On post-conviction appeal, however, the Delaware Supreme Court considered the merits of the argument and rejected it, opining:

> In reviewing defense counsel's cross-examination of Terry as a whole, we find trial counsel's questioning to fall within "the wide range of professionally competent assistance."  Defense counsel asked Terry, "Regardless, she shows you the picture and implies that this is the person that shot you, correct?"  The question was narrowly focused and required a yes or no response.  We reject [Petitioner's] contention that defense counsel erred by failing to anticipate that Terry's response to the question would include his cousin's hearsay statement that "somebody was going around town bragging that they shot somebody today."

> Moreover, we reject [Petitioner's] contention that defense counsel erred by failing to request a curative instruction. Defense counsel responded to Terry's hearsay statement by interrupting Terry's answer and rephrasing the question, which prompted Terry's affirmative response. We find counsel's choice to proceed in this manner, rather than interrupting his own cross-examination by asking the trial judge to give a curative instruction, to be entirely reasonable. Requesting a curative instruction would have drawn the jury's unwarranted attention to the hearsay testimony. Under the circumstances, we conclude that counsel's performance was well within the bounds of reasonable professional conduct.

*Goode*, 2018 WL 3323544, at *4.

After reviewing the record, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying the instant ineffective assistance claim. As previously explained, the Superior Court had already instructed the jury to disregard Terry's earlier statement about the" neighborhood" during direct examination. Consequently, trial counsel had no reason to anticipate that cross-examining Terry about Boone showing the photo to him would elicit another similar hearsay comment. The transcript also reveals that trial counsel attempted to cut off Terry's response once it became apparent that he was again relaying hearsay information. And finally, given the other evidence presented against Petitioner during the trial,[6] Petitioner cannot demonstrate a reasonable probability that the result of his trial would have been different but for trial counsel's question and absence of an additional curative statement. Accordingly, the Court will deny Claim Three for failing to satisfy the standard in § 2254(d).

---

[6]Both a video recording and an independent witness placed Petitioner at the shooting only minutes before it took place. *See Goode*, 136 A.3d at 307, 314.

23

### D.  Claim Four: Violations of the Delaware Rules, *Brady v. Maryland*, the Confrontation Clause, and Related Ineffective Assistance of Trial Counsel

In Claim Four, Petitioner contends that the State violated the Delaware Rules of Criminal Procedure, *Brady v. Maryland*, and the Confrontation Clause by not providing him with Raye Boone's name, the photo of Petitioner, and the email Boone sent to Detective Horsman prior to the motion *in limine* hearing.  Relatedly, Petitioner also alleges that trial counsel provided ineffective assistance by failing to ask the State to provide Boone's identity prior to trial.  For the following reasons, the Court concludes that Claim Four does not warrant habeas relief.

#### 1.  Delaware rules

Petitioner asserts that the State violated Delaware Superior Court Criminal Rule 16(b) – which governs the types of information subject to disclosure – by not providing Boone's identity, the photo, and Boone's email prior to the motion *in limine* hearing.  It is well-established that "[s]tate courts are the ultimate expositors of state law,"[7] and claims based on errors of state law are not cognizable on habeas review.  *Estelle*, 502 U.S. at 67-68.  Therefore, the Court will deny Petitioner's argument concerning a violation of Delaware's discovery rules for failing to assert a proper basis for federal habeas relief.

#### 2.  *Brady v. Maryland*

Petitioner contends that the State violated *Brady v. Maryland* by not providing trial counsel with Boone's identity, the photograph, or the email Boone sent to Detective Horsman containing Petitioner's photograph prior to the motion *in limine* hearing.  Petitioner presented the same argument on direct appeal, and the Delaware Supreme Court rejected it as meritless.

---

[7] *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

Therefore, Petitioner's instant *Brady* claim will only warrant relief if the Delaware Supreme

Court's decision was contrary to, or an unreasonable application of, clearly established federal

law.

The following facts provide important background information relevant to the Court's

analysis of Petitioner's *Brady* argument.  In June 2014, the State provided trial counsel with

redacted police reports.  (D.I. 15-5 at 7-11)  Detective Horsman's report stated that, on April 11,

2014, Terry showed him a photograph of Petitioner.  (*Id.* at 14)  The Detective noted that "a

family member who wished to stay anonymous" had provided the photograph to Terry.  (*Id.*)  On

the first day scheduled for trial, just prior to the Superior Court's hearing on Petitioner's motion

*in limine*, Petitioner mentioned that he had not received a copy of the email that contained the

photograph sent to Terry and to Detective Horsman.  (*Id.*)  Still, Petitioner did not object, request

the document, or ask for more time to investigate the identification.  (*Id.*)

The State introduced the photograph of Petitioner received by Terry during the hearing

on the motion *in limine*.  (*Id.* at 21)  At the same hearing, Terry testified that Boone came to the

hospital and showed him Petitioner's photograph on her phone.  (*Id.* at 26-27)  Boone had

obtained the photograph from Facebook and, after showing it to Terry, she sent the  photo to

Terry's phone.  (*Id.* at 28)  Detective Horsman testified that, at some point after Boone's visit to

Terry, he viewed the photograph on Terry's phone and also spoke with Boone on Terry's phone.

(*Id.* at 23-34)  Boone then emailed a copy of the photo to Detective Horsman.  (*Id.* at 22)

Trial counsel cross-examined Terry extensively during the hearing on the motion *in

limine*, asking what Boone had told him about Petitioner and why she thought Petitioner was the

person who had shot him (Terry).  (*Id.* at 29-33)  According to Terry, Boone told him that she

had heard from others in the neighborhood that Petitioner was bragging about having shot him.

(*Id.* at 30-31)

On direct appeal, Petitioner argued that the State violated *Brady v. Maryland* by not providing defense counsel with Boone's identity, the photograph of Petitioner, or the email Boone sent to Detective Horsman with Petitioner's photo prior to the motion *in limine* hearing. (D.I. 15-2 at 22-23)   Petitioner further argued that the delay in disclosure prevented trial counsel from interviewing Boone prior to trial and/or from examining either Boone's or Terry's phones. (*Id.* at 24)   The Delaware Supreme Court denied Petitioner's *Brady* argument, finding:

> While Boone's identity could arguably have been used for some impeachment purpose, the State did not suppress her identity and no prejudice resulted.  The police report provided to [Petitioner] under Rule 16(a)(1) stated: "The victim was able to identify the suspect through the photographed [sic] provided to him from a family member who wished to stay anonymous." As noted earlier, [Petitioner] did not ask the State to reveal the identity of the family member or file any motion seeking the identity of the family member.
>
> [Petitioner] also argues that the State belatedly disclosed Boone's identity on the eve of trial. "When a defendant is confronted with delayed disclosure of *Brady* material, reversal will be granted only if the defendant was denied the opportunity to use the material effectively." Once again, [Petitioner] did not ask for the identity of the person who supplied the photograph, despite knowing as early as June 5, 2014 that such a person existed. [Petitioner] did learn of Boone's identity at the January 12, 2015 hearing on his motion to suppress the identification, yet he did not ask for a continuance or otherwise claim that the late disclosure caused prejudice to the defense. At trial, [Petitioner] cross-examined Terry on the details of Boone's role in his identification, and had every opportunity to undermine and cast doubt on the validity of the identification. [Petitioner] has therefore failed to demonstrate a *Brady* violation.

*Goode*, 136 A.3d at 313.

26

In this case, Petitioner again contends that the State violated *Brady v. Maryland* by not providing trial counsel with Boone's identity, the photograph, or the email Boone sent to Detective Horsman containing Petitioner's photograph prior to the motion *in limine* hearing. Since the Delaware Supreme Court rejected this argument as meritless, the instant *Brady* claim will only warrant relief if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.

The clearly established federal law governing the State's disclosure requirements to a defendant is articulated in *Brady v. Maryland* and its progeny.  Pursuant to *Brady v. Maryland*, "[p]rosecutors have an affirmative duty 'to disclose [*Brady*] evidence ... even though there has been no request [for the evidence] by the accused,' which may include evidence known only to police." *Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 284 (3d Cir. 2016).  "To comply with *Brady*, prosecutors must 'learn of any favorable evidence known to the others acting on the government's behalf.'" *Id.*  In order to prevail on a *Brady v. Maryland* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, "either willfully or inadvertently;" and (3) the evidence was material.  *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

Here, the Delaware Supreme Court correctly identified *Brady* as the applicable law and also reasonably applied *Brady* in holding that the State did not suppress the evidence at issue. Detective Horsman's report was provided to Petitioner months before trial, and the report explained how a member of Terry's family who wished to remain anonymous had provided the

photograph.  Despite knowing about the photo and anonymous family member, Petitioner never requested or filed a motion to discover the family member's identity.

In turn, even assuming Boone's name constituted exculpatory or impeachment evidence, the delayed disclosure of her name did not violate *Brady* because Petitioner was able to effectively use that information to undermine and cast doubt on Terry's identification of Petitioner.  *See United States v. Higgs*, 713 F.2d 39, 43-44 (3d Cir. 1983) (when there is a delayed disclosure of *Brady* material "that defendants could use on cross-examination to challenge the credibility of Government witnesses," due process is not violated if the material was disclosed in time for the defendant to effectively use the material at trial.).  Boone's identity, the photograph, and the information Boone may have told Terry was relevant only to challenge the reliability of Terry's identification of Petitioner as the shooter.  Although Petitioner did not know Boone's identity until the day before trial began, once he knew her identity, he fully and effectively cross-examined Terry both at trial and in the hearing on the motion *in limine* about the effect Boone's beliefs may have had on his identification of Petitioner.

Presumably in an attempt to demonstrate how he was prejudiced by the State's late disclosure, Petitioner has filed an affidavit from Petitioner's girlfriend asserting that Boone "had ulterior motives" for giving the photograph to Terry.  (D.I. 11 at 24-25)  According to the affidavit, Boone "harbor[ed] an animus grudge against Petitioner, based on Boone's personal dislike of Petitioner, and vow of vengeance against him, predic[a]ted on a dispute that Boone was involved in regarding her dissolved friendship with Petitioner's girlfriend."  (D.I. 11 at 25)  Although the affidavit is dated February 6, 2015, Petitioner did not present the affidavit to the Delaware Supreme Court during his direct appeal or during his post-conviction proceeding.

28

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).  Given Petitioner's failure to explain his failure to introduce the affidavit in his earlier state court proceedings, the Court will not consider the affidavit in its instant *Brady* analysis.

For the reasons discussed, the Court concludes that the Delaware Supreme Court did not unreasonably apply clearly established federal law in rejecting Petitioner's *Brady* argument. Therefore, the Court will deny the instant sub-argument of Claim Four for failing to satisfy the standard articulated in § 2254(d).

### 3.   Trial counsel did not request Boone's identity

Petitioner also asserts that trial counsel was ineffective for failing to request Boone's identity at an earlier time.  (D.I. 11 at 20-27)   Petitioner did not present this ineffective assistance of trial counsel allegation to the Delaware state courts in his Rule 61 proceeding.  At this juncture, if Petitioner tried to raise the instant ineffective assistance of trial counsel allegation in a new Rule 61 motion in the Superior Court, the motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1).  *See Folks v. Phelps*, 2009 WL 498008, at *12 (D. Del. Feb. 26, 2009). Since there is no indication that Rule 61(d)(2)'s or (i)(5)'s exceptions to the bar in Rule 61(i)(1) and (2) apply in this case,[8] any attempt to exhaust

---

[8]Delaware Superior Court Criminal Rule 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim that the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid.  *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5).  Petitioner does not allege a valid claim of actual innocence, and he does not allege a lack of jurisdiction or that a new rule of constitutional law applies to his claims.

29

state remedies would be futile.  Given this futility, the Court must treat the instant argument as technically exhausted but procedurally defaulted.  Therefore, the Court cannot review the merits of this sub-argument of Claim Four absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner does not allege any cause for, or prejudice resulting from, his procedural default.  He also does not assert that a miscarriage of justice will occur if the argument is not reviewed.  Accordingly, the Court will deny the instant ineffective assistance of trial counsel argument as procedurally barred.

### 4.   Confrontation Clause

As previously discussed, Terry testified on direct examination that individuals were going around town bragging about how they shot him, and Terry testified on cross-examination that Boone was the source of that information.  (D.I. 15-3 at 43-44, 46)  On direct appeal, Petitioner argued that Boone's words and actions were expressed at trial through Terry and Detective Horsman in violation of the Confrontation Clause.  The Delaware Supreme Court denied the Confrontation Clause argument as meritless. Therefore, the instant argument will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the ... right to be confronted with the witnesses against him." U.S. Const. amend. VI.  In *Crawford v. Washington*, 541 US. 36 (2004), and its progeny, the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial that are admitted to establish the truth of

30

the matter asserted in the statement, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford*, 541 US. at 59, 60 n. 9; *see also Davis v. Washington*, 547 U.S. 813, 823-24 (2006). A testimonial statement is a statement that is made during non-emergency circumstances and which the declarant would objectively foresee might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005); *Davis*, 547 U.S. at 822.

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Supreme Court noted, "The right to confrontation may, of course, be waived, including by failure to object to the offending evidence[.]" *Id.* at 314 n.3 (2009). The Third Circuit has further held that, absent the defendant's dissent, the defendant's confrontation rights can be waived through his attorney's "legitimate trial tactic or [...] prudent trial strategy." *United States v. Williams*, 403 F. App'x 707, 708-09 (3d Cir. 2010) (holding that the defendant's attorney's decision to stipulate to the introduction of laboratory test waived the defendant's confrontation rights because there was no evidence in the record that the defendant dissented from his counsel's stipulation and the decision was prudent, strategic, and did not constitute ineffective assistance).

When denying Petitioner's Confrontation Clause argument and affirming his conviction on direct appeal, the Delaware Supreme Court opined:

> [T]he State did not violate the Confrontation Clause by presenting Boone's testimony through Terry and Detective Horsman. In certain situations the Confrontation Clause prohibits the use of testimonial hearsay in criminal trials. But Detective Horsman never testified to anything that Boone said. Although Terry did begin to repeat things that Boone had said, the Superior Court quickly halted the testimony and instructed the jury to disregard his statements. In this situation, the trial judge's prompt instruction for the jury to disregard the statements cured any error. Further, it was [Petitioner] who later on cross-examination elicited testimony about what Boone said.

31

> [Petitioner] has thus waived any claim that his rights under the
> Confrontation Clause were violated.

*Goode*, 136 A.3d at 313. The Delaware Supreme Court's denial of Petitioner's Confrontation

Clause claim was not contrary to clearly established federal law, because the Delaware Supreme

Court cited and applied *Crawford* in reaching its decision.

The Court also concludes that the Delaware Supreme Court's decision was based on a

reasonable determination of facts and involved a reasonable application of *Crawford* and its

progeny. The record supports the Delaware Supreme Court's factual findings that Detective

Horsman did not testify to anything that Boone had said, and that the Superior Court interrupted

Terry's recitation of Boone's statements and instructed the jury to disregard Terry's disclosures.

(D.I. 15-3 at 18-19, 44; D.I. 15-5 at 69-70)

The Court also concludes that the Delaware Supreme Court reasonably applied federal

law in concluding that Petitioner waived his Confrontation Clause argument. The record shows

that trial counsel extensively cross-examined Terry about Boone's statements to him, and this

Court has already concluded that trial counsel's decision regarding such cross-examination was

not outside the range of professionally competent assistance. *See supra* at III.C. Accordingly,

the Court will deny Petitioner's Confrontation Clause argument for failing to satisfy § 2254(d)(1)

and (2).

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether

to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of

appealability is appropriate when a petitioner makes a "substantial showing of the denial of a

constitutional right" by demonstrating "that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.